IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| MILLARD GUTTER COMPANY, a Corporation;<br><br>Plaintiff,<br><br>vs.<br><br>AMERICAN STRATEGIC INSURANCE CORP,<br><br>Defendant. | **8:26CV82**<br><br>**MEMORANDUM AND ORDER** |

This matter is before the Court on Defendant American Strategic Insurance Corp's ("American Strategic") motion to dismiss for failure to state a claim or, in the alternative, motion to dismiss improper Defendant and remove improper name. Filing No. 5. Plaintiff Millard Gutter Company ("Millard Gutter"), a contractor purportedly acting as the assignee of rights under a residential property insurance policy, seeks additional insurance proceeds for repairs it performed after a storm loss. Filing No. 1. American Strategic argues that because the alleged assignment is invalid under Nebraska law, Millard Gutter is not a real party in interest and cannot sue under the original contract. Filing No. 6. For the reasons set forth herein, the Court denies American Strategic's motion to dismiss.

## I. BACKGROUND[1]

American Strategic issued a homeowner's insurance policy to Barton Hooper and Gretchen Hooper. Filing No. 7-2. The policy lists the named insureds as both Barton

[1] These facts are taken from Plaintiff's Complaint (Filing No. 1), which, at this stage of the case, the Court construes as true. These facts are also taken from the Insurance Policy Declaration Page (Filing No. 7-2), Insurance Policy (Filing No. 7-3), Assignment Agreement executed on July 15, 2019 (Filing No. 7-4), and Assignment Agreement and Direction of Policy Owner executed on June 9, 2023 (Filing No. 7-5), which are documents necessarily embraced by the pleadings.

Hooper and Gretchen Hooper. *Id.* The policy contained the following condition for assignment of claim benefits: "No assignment of claim benefits, regardless of whether made before loss or after loss, shall be valid without the written consent of all 'insureds' and all additional insureds named in this policy." Filing No. 7-3 at 19.

During the policy coverage period, a storm damaged the Hoopers' home, and they filed a claim under their insurance policy. Filing No. 1 at 7.

On July 11, 2019, after the loss, Gretchen Hooper signed an "Agreement to Proceed" presented by Millard Gutter. Filing No. 7-4. According to the document, Gretchen assigned to Millard Gutter "any claim, right, interest or benefit under the above described insurance policy" for the home's storm-related damage. Filing No. 1 at 7; Filing No. 7-4 at 1. The document only contains the written consent of one insured, Gretchen Hooper. Filing No. 7-4.

Millard Gutter alleges that it "timely forwarded copies of the Assignment to [American Strategic]" and after that "Millard [Gutter] completed its services and billed the [Hoopers] and [American Strategic]." Filing No. 1 at 7. Millard Gutter alleges that "after crediting all payments made by [American Strategic] to the [Hoopers], who forwarded the payments to Millard [Gutter], there remains a balance due and owing for the supplies and services provided" to repair the home's storm-related damage. *Id.* at 7–8. Millard Gutter alleges that American Strategic's last payment on the claim occurred on August 11, 2021. *Id.* at 7.

On June 9, 2023, Gretchen Hooper also signed a document titled "Assignment" presented by Millard Gutter. Filing No. 7-5. The document states: "In partial consideration for the services rendered by Millard [Gutter], Gretchen Hooper agrees to assign to [Millard

Gutter] any benefit, claim and/or the right to proceeds from a claim against any insurance policy that may be available to provide payment or reimbursement of expenses associated with services rendered by [Millard Gutter]" on the home, "including but not necessarily limited to the policy issued by American Strategic." *Id.* Like the first document signed on July 11, 2019, this document only shows the written consent of one insured, Gretchen Hooper. *Id.*

Millard Gutter filed this lawsuit on August 25, 2025, in the District Court of Douglas County, Nebraska, but did not serve American Strategic until January 23, 2026. Filing No. 1. American Strategic removed the case to federal court[2] on February 23, 2026, *see* 28 U.S.C. §§ 1441, 1446, based on diversity jurisdiction, *see* 28 U.S.C. § 1332. *Id.*

In its complaint, Millard Gutter claims American Strategic breached its contract with the Hoopers by failing to pay the full amount of the Hoopers' costs to repair, restore, and replace the home's storm damage. *Id.* at 8. Millard Gutter alleges there remains a balance due for the storm damage repairs it provided. *Id.* at 7–8. Millard Gutter alleges American Strategic refused to pay the remaining balance for the repairs, which it asserts is at least $71,452.36. *Id.* at 8.

On March 2, 2026, American Strategic moved to dismiss for failure to state a claim or, in the alternative, dismiss improper Defendant and remove improper name. Filing No. 5. Among other arguments, American Strategic challenges the validity of the assignment. Filing No. 6. In its view, the assignment is invalid because Millard Gutter failed to obtain

[2] The Court agrees diversity jurisdiction is proper. Although Millard Gutter only alleges actual damages of $71,452.36, it also alleges it is entitled to attorneys' fees under Neb. Rev. Stat. § 44-359. A demand for attorneys' fees authorized by statute becomes part of the amount in controversy sought by the complaint. *Missouri State Life Ins. Co. v. Jones*, 290 U.S. 199, 202 (1933). Thus, when incorporating Millard Gutter's demand for attorneys' fees into the calculation, a fact finder can legally conclude that the damages are greater than the requisite amount. *Woita v. Lincoln Nat'l Life Ins. Co.*, No. 8:25CV197, 2025 WL 1684837, at *3 (D. Neb. June 16, 2025).

the written consent of all insureds, as expressly required by the policy. *Id.* And because there was no effective transfer of rights through a valid assignment, American Strategic asserts Millard Gutter is not the real party in interest and lacks standing to sue for breach of the original insurance contract between the Hoopers and American Strategic. *Id.*; *see Valley Boys, Inc. v. Am. Fam. Ins. Co.*, 947 N.W.2d 856, 866 (Neb. 2020) (noting the assignee can be the real party in interest "[i]f there has been a valid and complete assignment of rights" but if an assignment is invalid, "then the purported assignor remains the real party in interest").

In this diversity case, the parties agree that Nebraska substantive law applies.

## II. STANDARD OF REVIEW

Under the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 n.3 (2007). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Twombly*, 550 U.S. at 555). In order to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the plaintiff's obligation to provide the grounds for his entitlement to relief necessitates that the complaint contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.*

Under *Twombly*, a court considering a motion to dismiss may begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the

presumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Although legal conclusions "can provide the framework of a complaint, they must be supported by factual allegations." *See id.* (describing a "two-pronged approach" to evaluating such motions: First, a court must accept factual allegations and disregard legal conclusions; and then parse the factual allegations for facial plausibility). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## III. ANALYSIS

Fed. R. Civ. P. 17(a)(1) requires that every action "be prosecuted in the name of the real party in interest." *See Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (noting federal courts sitting in diversity "apply federal procedural rules but [state] substantive law"). The "'real party in interest' is the person who, under governing substantive law, is entitled to enforce the right asserted." *Cascades Dev. of Minnesota, LLC v. Nat'l Specialty Ins.*, 675 F.3d 1095, 1098 (8th Cir. 2012) (quoting *Iowa Pub. Serv. Co. v. Med. Bow Coal Co.*, 556 F.2d 400, 404 (8th Cir. 1977)).

"In a diversity action, state law determines the issue of who is a real party in interest." *Kuelbs v. Hill*, 615 F.3d 1037, 1041 (8th Cir. 2010) (quoting *Jaramillo v. Burkhart*, 999 F.2d 1241, 1246 (8th Cir. 1993)). Nebraska's "procedural statute or rule defining the real party in interest concept is not applicable, however, because it only governs who may sue in the state courts; under Rule 17(a), the federal courts are concerned only with that portion of state law from which the specific right being sued upon stems." *K-B Trucking Co. v. Riss Int'l Corp.*, 763 F.2d 1148, 1153 (10th Cir. 1985) (quoting 6 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1544, at 647–48 (1971)).

Millard Gutter asserts the right to sue American Strategic for breach of contract under Nebraska law based on an alleged assignment of any claim, right, interest or benefit under the Hoopers' insurance policy issued by American Strategic for the home's storm related damage. Filing No. 1 at 7. In other words, Millard Gutter asserts the right to recover from American Strategic any policy proceeds owed because of the storm damage claim.

Under Nebraska law, an insured may generally assign its rights under its insurance policy after a loss has occurred. *See* *Valley Boys, Inc.*, 947 N.W.2d at 867; *Millard Gutter Co. v. Farm Bureau Prop. & Cas. Ins. Co.*, 889 N.W.2d 596, 604 (Neb. 2016) (explaining it is customary for an insured "to make an assignment of his or her right to proceeds from an insurance company to the contractor and for the insurer to make direct payment to the contractor"). And if "there has been a valid and complete assignment of rights, then the assignee is the real party in interest," *Valley Boys, Inc.*, 947 N.W.2d at 865, and can "bring the breach of contract claim in its own name," *Millard Gutter Co. v. Shelter Mut. Ins. Co.*, 980 N.W.2d 420, 430 (Neb. 2022).

Neither party disputes these general principles. The issue is whether there was a valid assignment in this case. American Strategic's argument is grounded on contract, arguing that an express condition precedent in the insurance policy was not satisfied to establish a valid assignment of claim benefits. Filing No. 6 at 12. *See* *Dick v. Koski Pro. Grp., P.C.*, 950 N.W.2d 321, 356–57 (Neb. 2020) ("A condition precedent is a condition that must be performed before the parties' agreement becomes a binding contract or a condition which must be fulfilled before a duty to perform an existing contract arises."). The policy contained the following condition for assignment of claim benefits: "No

assignment of claim benefits, regardless of whether made before loss or after loss, shall be valid without the written consent of all 'insureds' and all additional insureds named in this policy." Filing No. 7-3 at 19. Thus, American Strategic asserts that the assignment to Millard Gutter is invalid because it only obtained the written consent of one of two individuals listed as named insureds under the policy, Gretchen Hooper. Filing No. 6 at 12.

Under Nebraska law, "[a]n insurance policy is to be construed as any other contract to give effect to the parties' intentions at the time the contract was made. When the terms of the contract are clear, they are to be accorded their plain and ordinary meaning. While an ambiguous policy will be construed in favor of the insured, an ambiguity will not be read into policy language which is plain and unambiguous in order to construe it against the preparer of the contract." *Design Data Corp. v. Maryland Cas. Co.*, 503 N.W.2d 552, 559 (Neb. 1993) (citations omitted). Here, the plain language of the insurance policy discloses an express condition precedent that requires Millard Gutter to obtain the written consent of all insureds to create a valid postloss assignment.

However, a nonassignment clause may be void as a matter of public policy. This case presents important but competing policies: the right to freedom of contract versus the free assignment of a chose in action.[3] "The parties to an insurance contract may contract for any lawful coverage, and the insurer may limit its liability and impose restrictions and conditions upon its obligation under the contract not inconsistent with public policy or statute." *Design Data Corp.*, 503 N.W.2d at 559 (citations omitted); *see*

[3] "[A]fter a loss has occurred, an indemnity contract of insurance is a chose in action because it confers a right to bring a legal action to recover a sum of money from or out of the contract." *Farm Bureau*, 889 N.W.2d at 600 (citations omitted).

*also* *Farm Bureau*, 889 N.W.2d at 603–04. "While [the policy favoring free alienability of a chose in action] is significant and may reflect a public policy, it is not paramount and must be balanced against a very strong policy . . . favoring the freedom to contract." *Farm Bureau*, 889 N.W.2d at 604 (citations omitted). "But in some situations, contractual provisions may be void as against public policy." *Id.* (citations omitted). This case turns on whether a condition for postloss assignment of claim benefits requiring the written consent of all insureds in a property insurance policy is contrary to public policy.

Millard Gutter, relying on *Farm Bureau*, argues that under Nebraska law, postloss assignments of insurance proceeds are generally enforceable. It states, "The rationale is straightforward: once a covered loss occurs, the insured possesses a chose in action that may be assigned, and public policy favors free alienability of a chose in action." Filing No. 10 at 5.

In *Farm Bureau*, the Nebraska Supreme Court held that in the absence of a statute to the contrary, a postloss assignment of a claim under a homeowner's insurance policy is valid despite a general nonassignment clause in the insurance policy. 889 N.W.2d at 605. The Court notes, however, that the primary issue in that case was whether the assignment of a claim may be valid where the insurance policy stated that any assignment made *without the insurer's consent* would be invalid. But the court did not address whether a co-insured can unilaterally assign another co-insured's interest in the claim.

In the present case, the insurance policy expressly prohibited assignment of a postloss claim without the written consent of all insureds. American Strategic argues that "[w]ithout receiving the consent of both insureds, the assignment can be seen as no more than a partial assignment; a partial assignment leaves the assignor with a remaining

interest, and both parties then have separate stakes in the same cause of action." Filing No. 6 at 13 (citing *Valley Boys, Inc.*, 947 N.W.2d at 866). So, Millard Gutter holds a partial interest in the claim, while the non-assigning co-insured homeowner, Barton Hooper, retains a remaining stake in the same cause of action. American Strategic argues that "[u]nder Nebraska's real party in interest laws, that type of partial assignment inherently brings risks of impermissible claim-splitting and leaves key parties absent from the case." *Id.*

In holding that the postloss assignment was valid despite a nonassignment clause, the court in *Farm Bureau* balanced the public policy favoring free alienability of a chose in action against "a very strong policy . . . favoring the freedom to contract." *Farm Bureau*, 889 N.W.2d at 604. The court noted that public policy may favor enforcement of a nonassignment clause in some situations. *Id.* (citing *Obstetricians-Gynecologists, P.C. v. Blue Cross & Blue Shield of Nebraska*, 361 N.W.2d 550, 556 (Neb. 1985)). But it reasoned that the record before it contained no similar justification for the nonassignment clause because Farm Bureau 1) failed to show why it inserted the nonassignment clause in its policy or to otherwise support its enforcement when the assignment occurs after the loss and 2) did not point to any specific risk or burden that it may face as a result of the assignment. *Id.* The court further noted "that we are not confronted with a direct contradiction of explicit contractual language, i.e., Farm Bureau's policy did not expressly prohibit assignment of a postloss claim." *Id.* at 605.

Here the named insureds are husband and wife. They presumably own the property in joint tenancy with rights of survivorship. One owner signed the Agreement to Proceed (Filing No. 7-4) presumably with the consent of her spouse and joint owner. She

presumably had authority from her spouse to enter into the contract for services and the assignment. Any claim by the co-insured may be extinguished by the 5-year statute of limitations for written contracts. The only named insured with a claim against American Strategic in the context of the instant case is the assignor who signed the Agreement to Proceed. Filing No. 7-4. In such event, American Strategic's defense to a split claim is moot. Additionally, Public Policy would support Millard Gutter's assertion that the named insured signature is not appropriate for married couples who jointly own property because the authorization of one binds the other.

The Court is unwilling to decide the public policy issue in the context of a motion to dismiss, especially given the paucity of specific factual pleadings in the complaint transferred from the State Court. A more complete factual record is necessary.

The Court held a hearing in which the parties argued all the issues raised by American Strategic's motion to dismiss including those not addressed herein. Millard Gutter's counsel suggested an amended complaint may be appropriate to resolve the issues raised by American Strategic and the Court's questions. The Court agrees.

For these reasons, the Court concludes that American Strategic's motion to dismiss is denied without prejudice. On its own motion the Court will allow Millard Gutter to further amend its complaint in the hope it will more specifically plead facts to address the Court's concerns as expressed herein.

## IV. CONCLUSION

For the reasons set forth herein, the Court finds American Strategic's motion to dismiss is denied.

IT IS ORDERED:

1. Defendant's Motion to Dismiss, Filing No. 5, is denied.

2. On the Court's own motion, the Plaintiff is granted leave to amend its complaint by December 11, 2026.

Dated this 24th day of November, 2026.

BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge